Good morning. May it please the court, thank you for taking the time to address this matter today. Tomorrow morning, if a Turkish Airlines operated 777, departed New Orleans and crashed into the Atlantic, killing hundreds of American citizens due to gross negligence, SAS is here to argue to you today that the grieving American families must travel to Istanbul to seek justice. Never mind that foreign airlines have been defending themselves against these claims in American courts for almost a hundred years, first under the Warsaw Convention, then under the Montreal Convention. Never mind that the expectation of every relevant party has always been that they would do so. The treaty negotiators, the President, Senate, the 137 contracting nations, the passengers, and the foreign airlines, they all understood that if treaty jurisdiction was satisfied, a personal jurisdiction defense would not stand in the way of the U.S. Court taking up the claim. This was so because prior to Daimler v. Bowman, a foreign airline merely needed to fly in and out of the U.S. city for personal jurisdiction to attach in that venue. And this fact was not lost on the negotiators of the nations negotiating Montreal's fifth jurisdiction. Using words such as fundamental fairness and minimum contacts, they demanded the additional requirement that the airline itself or through its partner must lease or own space in the jurisdiction for them to be willing to submit to a U.S. court. The district court's ruling below, echoing other wrongly decided rulings around the country, nullified the Montreal Convention, and it has left American passengers with less protection than they've ever had in the modern age of air travel. This court is now the second at the appellate level to consider this problem. The Second Circuit was the first to take it up in this realm and they remanded it to the district court for further consideration where it has now been rebriefed at the district level. Today, I want to suggest three possible solutions to the court. First, though the Second Circuit also recently ruled in National Union Fire Insurance, the UPS, that the Montreal Convention does not confer personal jurisdiction and the lower court here relied on that decision, we believe this case was wrongly decided due to a mal-intentioned but misguided analysis of the law and the impact of the decision on everyday Americans is important enough to warrant a circuit split. The Supreme Court instructed in BG Group v. Republic of Argentina that treaty interpretation normally is a matter of determining the party's intent and again in Medellin v. Texas to look at the negotiation and drafting history as well as the post-ratification understanding of the signatory nations. There can be no doubt that every party understood the agreements negotiated in the Montreal Convention were entirely sufficient to hail foreign airlines into U.S. courts. So the treaty doesn't use the words personal jurisdiction. These are American words. It also doesn't use the words fundamental fairness, which is a Canadian way of expressing a similar concept, but text or lack thereof cannot be considered outside of the context in which it was written. Personal jurisdiction was assumed to be satisfied in every instance that treaty jurisdiction would apply. For this court to uphold treaty intent would be no more than to acknowledge what is plain. The next solution I propose to the court is based upon a ticket-based contractual waiver of personal jurisdiction and it was suggested by Justice Lohier in his UPS concurrence. He would go on weeks later to write the opinion in Lenski remanding the matter to the court. While UPS failed to meet its burden of showing a meeting of the minds in this case, our decision does not definitively foreclose a contract-based theory of consent to personal jurisdiction under the Montreal Convention. There may be cases in which the defendant carrier impliedly or expressly consented to personal jurisdiction in, for example, the court of the domicile of the carrier or the court at the place of destination by doing business as an international flight out of New Orleans, the foreign airline could expect to wind up in a New Orleans court and the passenger expected that she had a right to bring a suit there. Only now have these foreign airlines been able to become armchair constitutional scholars, decrying the due process and justices of the last 100 years. So, address specifically what weight you give, if any, to SAS's waiver of service under . . . as it interrelates with Rule 4K2. Waiver of service in what regard, Your Honor? Are you contending that they waived service of process? Yes. Well, I'm contending . . . yes. And if so, what effect does that have? I'm not contending that under a waiver they waived service of process. I'm contending that 4K2 would be used in conjunction with the waiver, and also it would be used in conjunction with an approach under a specific jurisdiction based on Ford, which is the next section that I'm going to talk about. And I will talk next about 4K2 and why I believe it applies to both of these. And that is what I left for last, which is the easiest solution, and that's what the Lansky Court actually . . . when they remanded this, this is what they suggested, and it involves two parts. It involves using 4K2, which is the federal long-arm statute, and it also involves finding a specific jurisdiction under the Ford Relates to Doctrine. First, why 4K2? 4K2 was passed at the suggestion of the Supreme Court nominee, Capitol, to fill a gap whereby a defendant may not have sufficient contacts with any one state, but does have sufficient contacts with the country as a whole to satisfy due process, and it also allowed federal courts to avoid state long-arm statutes when they were trying to effectuate service, and it could have been written precisely for cases such as this one. Now, 4K2 has three requirements. First, the claim must arise under federal law. The Fifth Circuit held in World Tanker Carriers v. Molia that all federal questions under 1331 arise under federal law, and even beyond that, to rule that admirably cases are subject to 4K2. So, check one. Next, the foreign defendant must not be subject to any state's court of general jurisdiction, and the Fifth Circuit, again, made this inquiry easy. In Adams v. Union, Mediterranean de Securita, it said that if no party concedes jurisdiction in any state's courts, then for purposes of 4K2, this prong is satisfied. Check two, based on the facts of this case. And lastly, we reach the crux, the due process argument. Here, the Lenski Court said, especially after Ford, the fact that the plaintiffs were allegedly injured outside the United States cannot be the dispositive consideration in the specific jurisdiction analysis under Rule 4K2b. The district court must consider whether the plaintiff's claims more broadly arise out of or relate to THY's contacts with the United States, including all of THY's activities referred to above. So, the Supreme Court's ruling in Ford changed the paradigm for specific personal jurisdiction. It ruled that strict causation is not necessary to place an injury in a forum. It's enough if the defendant purposefully avails itself of a forum, and these activities sufficiently relate to the injury. And I would submit that the Ford rationale parallels this case illustratively. Ford advertised and provided support services in Montana for a defective car. SAS advertised and provided support services in the United States for defective travel. But SAS did more than that. It also sold the defective car in the United States. And this is what Ford's complaint was all about. The cars at issue hadn't been sold in Montana or Minnesota. SAS took all the same activities that Ford did to support and to service, to advertise, to sell. It purposely availed, and these activities per Ford were sufficiently related to the defective travel that the court's due process inquiry should be satisfied. But the additional fact that the travel was actually purchased and delivered in the United States leaves no question that the Ford inquiry is complete. And add to this an additional weight. The plaintiff's contract with SAS incorporates by statute the Montreal Agreement, which itself incorporates by tariff an updated notice requirement the Montreal Convention. The Montreal Convention governs jurisdictional authority, governs available claims, and it governs damages. It preempts all other forms of action. So when a passenger enters into a contract with a foreign airline, she binds herself to these conditions. As such, the contract that Ms. New Orleans relates even more profoundly to the incident that occurred because it affected her rights as to what she could seek to do about it. Was Hardy purchased directly from SAS or did she purchase through United or some other carrier and then was subsequently directed to SAS? She purchased her flight directly through SAS. She had two flights. She had a flight with United that took her to New Jersey and she had a flight with SAS that took her to New Jersey. United is an alliance partner of SAS. She didn't purchase the flight, so as part of one ticket, that may be something that the appellee wishes to focus on. We believe that's irrelevant. SAS does plenty of business in New Orleans through its United partner, which is per the strictures of the treaty. Now, I'm not arguing that under 4K2 that a plaintiff can bring a Montreal claim in any U.S. court that she desires, but as the 1993 amendment to Rule 4K2 explains, the availability of transfer for fairness and convenience under Section 1404 should preclude most conflicts between the full exercise of territorial jurisdiction permitted by this rule and the Fifth Amendment requirement of fair play and substantial justice. So we believe this claim was brought appropriately in New Orleans under any approach. If the court chooses to uphold treaty intent, then Section 30-2 allows a plaintiff to bring suit in her place of principal and permanent residence, and if the court chooses to endorse the 4K2 approach under either a waiver or a specific jurisdiction basis, then there's ample justification to find venue for Ms. Hardy's claim in New Orleans, as it's where she lives, where she traveled from, where she purchased her tickets, and where SAS flights regular routes through United Airlines, its alliance partner. Either way, I respectfully ask this court to reverse the district court's dismissal and remand this matter so Ms. Hardy's Montreal claim may proceed. I welcome any questions. Thank you. You saved time for about . . . I did. Mr. Schwab. Thank you. Oh, my time's up. Good morning, judges, and may it please the court, my name is Brad Schwab and I represent the defendant and appellee in this case. It's Scandinavian Airlines Systems and it's got Denmark, Norway, Sweden at the end of its formal name. We've been referring to it as SAS. So, my client in this case is a foreign airline organized under the laws of a foreign country and headquartered in a foreign country, and the plaintiff alleges that she was injured in a foreign country by my client's negligence . . . All right, so SAS flies in and out of seven different cities in the United States. It advertises to American buyers. It participates in the Star Alliance with United as it's previously been stated. It owns and operates a subsidiary in the United States. It sells tickets online across the U.S. and it's regulated by the FAA. Do you disagree with any of that? I do not. We have no reason to disagree with any of that, Judge. The question in this particular case is whether jurisdiction is appropriate under the standards established by the Supreme Court case law, and I think that's where the jurisdictional questions should start and end. So, would you be subject to personal jurisdiction in any district in the United States? I'm sorry, Judge? Would you be subject to personal jurisdiction in any district court in the United States? For purposes of this case, we don't believe so. For purposes of this case, we think the proper place for jurisdiction is in Oslo, where all the facts happened, where she was injured, where the alleged negligent conduct took place. You have been involved in other litigation within the United States? Is that correct? SAS has, Your Honor, under different factual situations, some of which implicate specific jurisdiction in a U.S. court based on injuries that occurred in the U.S. in those courts, and others, a bankruptcy petition which was required to be filed in the U.S. courts because the assets in question were in the United States. But, again, we believe the proper starting point for this is the U.S. Supreme Court jurisprudence on specific and general to SAS's operation, but we don't think there's jurisdiction under any of those standards. With respect to general jurisdiction, the only potential basis here is the exceptional case discussed in Daimler, and we certainly don't think that's met by an airline that has several, at least over 100 airport operations across the world, and seven of which happen to be in the United States, would be subject to general jurisdiction in every U.S. federal court for anything that happens around the world. We think general jurisdiction is out. The facts and the prevailing case law just do not support it. If there's general jurisdiction here over SAS based on seven airports in a diversity case brought under the 14th Amendment against any domestic airline, there would be general jurisdiction in every court that conducts airline operations. We certainly don't think that's the case, and in Douglas, this Court recognized it's never before found general jurisdiction over any company in the United States under the exceptional case discussed in Daimler. We certainly don't think this should be the first. Well, the district court seemed to focus excessively on any contacts with the Eastern District of Louisiana, but that's not really what we look to, is it, in terms of the question of personal jurisdiction as distinguished from, say, a venue? Under the Douglas decision, the general jurisdiction question is determined with respect to the United States as a whole under 1331 cases. That's what Douglas held. We don't believe there's an analog specifically holding that with respect to specific jurisdiction. I could not answer that for you based on the prevailing case law, whether the specific jurisdiction inquiry under 1331 cases is directed to the actual state in the United States or the United States as a whole, but I tend to agree with you that the analysis would look to the United States as a whole, but with specific jurisdiction, it's not only looking to the airline's contacts with the United States, it's looking to the airline's contacts that relate to or arise from the actual claim at issue in the case. It's different than general, and we certainly don't think Ford imputed the general jurisdiction standards of looking to an airline's overall operations into a specific jurisdiction analysis by taking those overall operations and making them relevant to a specific jurisdiction analysis. Well, as discussed by your opposing counsel, so the ticket was bought through the alliance and the passenger flew on United to Newark, and then SAS flew from Newark to Oslo. Is that what happened? No, sir, and I don't believe that's what they're contending. The ticket was not purchased via the alliance. The plaintiff bought a ticket on United from New Orleans to Newark and then bought a separate ticket aboard SAS from Newark to Oslo. SAS doesn't fly into Louisiana airports, and the very first time I've ever heard that SAS does substantial business in New Orleans through United was today during opposing counsel's argument. That's certainly not alleged in their pleadings. It's not argued in their brief, and it's never been proven with any evidence. I don't believe that's a relevant consideration. The alliance was not used in this transportation at all, and again, SAS doesn't do, doesn't have any flight operations in the state, but if you're looking to United . . . But the flight did depart, the SAS flight did depart from Newark. Correct, Judge, but there's no, the allegations, the claim-specific allegations have nothing to do with the departure of the flight out of Newark. Anything that happened during the flight overseas or the landing of the flight, it's specifically the deplaning of the flight in Oslo, and if you look at forward, and you look to the claim-specific allegations, we don't believe that the, there's anything having to do with the United States as to what they're claiming. The plaintiff's alleged injuries occurred in Oslo, the alleged negligence occurred due to the deplaning staff in Oslo, and an alleged gap between the passenger boarding bridge and the plane's main boarding door. There's no allegation at all in the plaintiff's claims that anything having to do with the ticketing process or the plaintiff's booking her ticket via SAS's website caused her injuries, and we don't believe she's claiming that, and if she is, it's not stated in her pleadings very succinctly. But again, getting back to the analysis, we don't, we don't think there's specific jurisdiction under the prevailing case law just based on these facts, and we also don't think that the Montreal Convention confers an independent basis of personal jurisdiction outside that somehow supersedes the U.S. Supreme Court case law interpreting the Constitution. So which, which case do you rely on most heavily for your assertion that there's no specific personal jurisdiction? We believe the Walden case is very, the Supreme Court's case in Walden is very similar to this one. Again, although, although their general jurisdiction analysis, we think this case falls squarely in line with Patterson, Douglas, and Daimler, the facts of those cases are virtually identical to this one. A foreign company, a foreign alleged negligence, foreign injuries, and the fact that the plaintiffs in those cases didn't even attempt to make a specific jurisdiction argument should not, we don't believe, impact their relevance to the facts of this case where the U.S. Supreme Court found no jurisdiction, and in Patterson, this Court. So with respect to the Montreal Convention, we, we think the district court was correct in relying on the National Union decision. The decision was well, well reasoned, and specifically, it did not focus on any distinction between Article 33.1 versus Article 33.2 as the plaintiff argues. If you look at Article 33.2, it actually incorporates, by reference, the grounds for jurisdiction in Article 33.1, and it includes, it does include a fifth jurisdiction, but in enacting that, there's no, there was already an existing body of case law under Warsaw that Article 33 in general did not provide for personal jurisdiction. It was only treaty jurisdiction. So if there was some overarching intent to create a personal jurisdiction basis by enacting the Convention, the drafters almost definitely would have included something to that effect in their drafting materials or noted it in the article itself. What the National Union case did is focus on Article 33, subsection 4, which says that nothing in this article prevents the, the actual part, the state where the, the state is enacting its own procedure laws, and the enacting or enforcing its own procedure laws. What the National Union Court did to interpret that was say, while the Montreal Convention permits claims arising under the treaty to be brought in a particular nation, it does not guarantee the plaintiff's the unconditional right to litigate in those nations' courts. So, in essence, it's subject matter jurisdiction under Article 33, and anything having to do with procedure, that differs from country to country, and here, personal jurisdiction in due process is certainly different than the other countries to the, the international treaty. All that is determined with respect to the local law of the country. We think more, more importantly, though, even if, even if Article 33 was intended to confer personal jurisdiction, and this Court finds that, the National Union was wrong, it wouldn't change the jurisdictional analysis, because the Montreal Convention is a U.S. treaty. It's not an amendment to the U.S. Constitution. It can't, and in the Amaya v. Stana Lit Oil case, this Court said, the treaty-making power does not extend so far to authorize what the Constitution forbids. So, again, we think all roads lead back to the general and specific jurisdiction standards, and we don't think they're satisfied in this case. Now, with respect to the argument on waiver, we have two points. We, we, first, we think the plaintiffs waived the waiver argument. It was never raised in the district court. It was not argued in the district court. There's no case law to that effect cited in the district court. The district court didn't discuss it or decide anything having to do with waiver of personal jurisdiction in its opinion. So, we think the waiver argument has been waived and shouldn't be decided on by this Court on appeal, and second, and more importantly, we don't think it's got any merit. The, the statute that the plaintiffs cite to that says that, what they represent to say that we incorporate the Montreal Convention into our, into the contract of carriage, actually, it, it references a different agreement, the Montreal Agreement, which was signed, I think, three decades before the Montreal Convention. So, that agreement just increases the, the limits of liability under the old Warsaw Convention, and all that is incorporated into our, our contract of carriage. What's not in the contract of carriage and not in the Montreal Agreement from 1966 is any waiver of personal jurisdiction in this case. If there is, under the standards the Supreme Court established, there'd be personal jurisdiction over airlines in virtually every case. So, if you all . . . do you all have any questions? Thank you, Mr. Schwab. Mr. Woodrow for rebuttal. Your Honors, decrying the due process injustices of the last hundred years. Let, let, let me read from the, the minutes of the Montreal Convention negotiators. Much progress has been made since the adoption of earlier protocols regarding the minimum contacts, which would be required for a small carrier to be compelled to defend a lawsuit in another state. Paragraph 2, subparagraph C, represented a carefully negotiated compromise on that issue and reflected the fundamental fairness which the United States considered was required to address the concerns of small air carriers. Skip down. This constituted substantial protection for small carriers. Not only did air carriers have to have either their code or their aircraft touch his state, they also had to have a place of business in his state. Now, as I said before, the drafters would not have mentioned personal jurisdiction because the issue was not relevant at the time. Personal jurisdiction was, was a given. It was easy to get general personal jurisdiction. And if you read the President, when he submitted the, the, uh, when Bill Clinton submitted it to the, the Senate, he said, given the number of carriers whose operations in the United States satisfy these criteria, this fifth jurisdiction provision should ensure that nearly all U.S. citizens and other permanent residents of the United States have access to U.S. courts to pursue claims under the convention. Similarly, when Chairman Lugar released it from the Senate, he said under Article 33, therefore, U.S. courts will have jurisdiction in nearly all cases involving death or personal injury to passengers who reside in the United States, thus eliminating the need for such passengers or their heirs to bring suits in foreign courts in order to obtain jurisdiction over air carriers. This is just what SAS is arguing. They're arguing that we go back to before, not just before Montreal, but before Warsaw, that we go back to no treaty whatsoever. And this clearly goes against the intent of every party who worked so hard for all these years, passing these treaties, shaping these treaties, operating under these treaties. Uh, this, Ms. Hardy's incident falls squarely under treaty jurisdiction. She has no recourse but to go through a Montreal claim. The fact that, that she didn't buy her ticket, uh, and, and select it with United Airlines and, and have that part of one, one journey from New Orleans is irrelevant to the fact of whether SAS is subject to Montreal jurisdiction in the United States. And, uh, and as far as availment to, to New Orleans goes, uh, I, I go to the records at 502 through 504. SAS's website interactivity demonstrates personal targeting of residents in Louisiana. As an example, their website markets eight flights on February 27, 2022 out of New Orleans to Oslo, Norway using SAS's Star Alliance partners that connect to SAS's flights from which a New Orleans passenger can choose. Similarly, SAS markets six flights that would SAS offers more flights from the U.S. to Scandinavia than any other carrier. Uh, that's the record, 774. Uh, to quote SAS's website, fly Scandinavian airlines to America from north to south, from east to west, the record 783 to 784. Uh, it, Your Honor, I would, I would submit that SAS is clearly subject to Montreal jurisdiction. And if, if parsing this case down were to, were to try to say otherwise, the effect of it is to nullify the treaty. The precedent that's set here today is going to be the precedent that stands. And I believe this treaty is important and that it, it protects passengers, it's protected passengers for a long time. And I would ask the court to protect it. All right. Thank you, Mr. Woodrow. Your case and both of today's cases are under submission and the court is in recess under the usual order.